## GEORGE CATLIN *v.* FREDERICK R. GROTE.

In an action against a vendor of real estate, to recover compensation for services rendered in effecting a sale under an alleged employment of the vendor, the defendant alleged that the plaintiff had in fact acted as the agent of the purchaser, and produced in evidence a written receipt given by the plaintiff to such purchaser, acknowledging the payment of $700 "in full of all demands for services on the sale and conveyance of" the property in question; *held,* that although this instrument was high evidence in support of the defence, yet that it did not operate as an estoppel upon the plaintiff, nor preclude him from introducing oral testimony explaining the receipt, and showing that, notwithstanding the terms thereof, his services were performed solely under the defendant's employment.

It is proper to submit such receipt and such oral evidence to the jury, and their finding, if all the testimony, together with the receipt, admit of it, will be sustained, although the court is doubtful, whether, if sitting as a jury, they would have come to the same conclusion upon the facts in controversy.

An admission contained in an instrument given by the plaintiff to a third party, does not necessarily estop the plaintiff to prove the real state of the transactions therein referred to, if it becomes material so to do, as between him and the defendant.

An admission operates as an estoppel only where it has been acted upon by the party in whose favor it is claimed so to operate, and in such wise that he would suffer injustice if the admission were retracted or contradicted.

THE plaintiff, who was a lawyer, sought in this suit to recover compensation for legal services performed by him for the defendant, and also for services in effecting a sale to the defendant of real estate held by the heirs and executors of Richard Conner, deceased, at Castleton, Staten Island.

The case and the evidence are thoroughly stated in the opinion pronounced at general term, where the cause was brought by the defendant, upon an appeal from an order entered at a special term, denying a new trial. The action was tried before DALY, J., and a jury, and a verdict found for the plaintiff. The following is an abstract of the judge's charge:

"The claim of the plaintiff against the defendant is for

services rendered, part as a lawyer and part in some other capacity. The claim for services rendered as a lawyer is not disputed. The dispute in the action arises in respect of two transactions, the claim of the plaintiff for $50 commission on the Evening Side purchase, and the other for $875 commission on the purchase of the Conner farm. As to both these transactions, the general principle of law applies, that if one man renders another a service, the law presumes he is entitled to compensation. If there be no agreement for the rate of that compensation, it is to be taken according to the value of the service rendered. It is of no consequence whether the plaintiffs are lawyers or not, they are equally entitled to compensation, according to the value of the services rendered. Their being lawyers only affects the scale and not the right of compensation. The question is, what is the value of their services? $50 is claimed by them for the purchase of the property at Evening Side. This is not the usual broker's commission. The usual commission of brokers is 2½ per cent. As to broker's commission, there is no fixed rule to govern it, and though there may be a custom among real estate brokers, it does not follow that that custom is applicable to this case. The value of a broker's service in a business to which he is accustomed is greater than that of a stranger. The jury are not bound by the evidence as conclusive with regard to either; in both, the rate of compensation is according to the value of the services rendered. The defendant, it appears, was satisfied as to the Evening Side purchase. As regards the farm it was different. The plaintiff, however, reduced the price. This was a service rendered. As regards the whole transaction, the testimony of the brokers is not to be taken as the rule of damages, but only as illustrative. Brokers' services are usually of more value. You are to look at the whole together, and allow to the plaintiff what you think his services are worth. There arises, however, another question in relation to the plaintiff's demand for commission for sale of the Conner farm, and that is as to the payment of $700 by the executors. If that payment was made in consequence of his employment

as agent for the Conner family, the plaintiff has no right to recover any thing. It is a well settled principle, and has been often decided by this court, that the same person cannot act as agent for both parties. He cannot receive compensation, and has no right to compensation from both. He cannot render the same kind of services for both. If the evidence satisfies you that Catlin was paid by the Conner family for the sale of the property to the defendant, he had no right to compensation in this action. There is evidence that $700 was paid to him, and the receipt states what it was paid to him for. Mr. Conner swears, however, that he acted himself in the sale, and that the $700 was paid to Catlin as a compensation for having found a purchaser. There is no evidence on this point than Wood's, who received part of the compensation. The mere fact of Catlin receiving the $700 is no bar to his recovery in this action, if he did not act as agent to the Conners. As attorney, he may recover compensation, and there is nothing in the fact of his having subsequently acted as counsel for the Conners to preclude him from that recovery. The plaintiff is entitled to a verdict for his legal services, amounting to about $44. The question as to the amount of his compensation for the purchase of Evening Side and the Conner farm is for you to decide, but as to the Conner farm, you are also to consider whether he did or did not act as agent for the vendors on that sale."

The following is the concluding portion of the opinion of INGRAHAM, FIRST J., at special term, on denying the motion for a new trial:

" Upon the trial it appeared that the plaintiff had received from the owners of the farm $700, which, in his receipt therefor, he states to be in full of all demands for services on the sale and conveyance of the farm of Conner. It also appears in evidence, that one of the owners of the farm offered the sum of $2,000 to any one who would procure a purchaser of the farm at $40,000, but no offer was made for any smaller sum. The same person testified that Catlin was not the agent for selling, to his knowledge; that he acted for himself, and

employed nobody to act for him in the negotiation; that Catlin acted for Grote and not for himself. The jury were instructed, that if Catlin was the agent of Conner in effecting the sale, and received from him a compensation, he was not entitled to any from the defendant. That the same person could not at the same time act as agent for buyer and seller, and receive a compensation from both; but the mere receipt of a gratuity from Conner for finding him a purchaser, to what Catlin had no legal claim, would not deprive him of a right to compensation from the defendant, unless the jury found that Catlin was acting as the agent of Conner in making the bargain. Under these instructions the questions of the agency of Catlin were submitted to the jury. I think that submission was proper, and that the questions were for a jury to pass upon. There was evidence from which the jury might conclude that no such agency existed, and if not, then the plaintiff was entitled to compensation from the defendant for his services. The receipt was not of such a conclusive nature as to prevent the submission of the question to the jury; and if not, then their verdict ought not to be set aside, even if the court on the trial might have thought otherwise. Whatever doubt I may entertain upon the facts, I feel bound by the findings of the jury, and do not feel warranted in ordering a new trial. Motion for a new trial denied."

*Henry Whittaker*, for the defendant.

*William I. Street* and *William M. Evarts*, for the plaintiff.

By THE COURT. WOODRUFF, J.—This action, so far as relates to the question in controversy on the appeal herein, was brought to recover for services rendered for the defendant in negotiating a purchase of real estate. The pleadings are not laid before us, but I gather from the case as submitted, and the arguments of counsel, that the defendant denied his liability for those services, resting such denial upon the ground that the plaintiff was employed by and received com-

pensation from the vendor of the property in making the sale. And in regard to the rule of law upon which such defence is urged, there appears to be no controversy. At all events the appellant assumes that the charge of the judge who presided at the trial was correct upon that subject.

A verdict having been found for the plaintiff, the defendant moved, at special term, for a new trial, and, on the denial of the motion, he appeals from the decision there made, and insists that the verdict is against evidence, and contrary to the law declared by the court to the jury, applied to facts which he claims were conclusively proved by the defendant.

Upon the general question, whether the defendant employed the plaintiff to effect the purchase for him, or whether, on the other hand, he was employed by the vendor of the property, the verdict is not only not against the evidence, but is strongly supported by it, unless a certain receipt, which will be presently noticed, is to be taken as so conclusive against the plaintiff that the other evidence ought not to have been submitted to the jury at all.

That the defendant became the purchaser is not disputed. That the negotiations for the purchase and sale, and the settlement of its terms down to the time the written contract was signed, were conducted through the plaintiff, seems not disputed, and I think there is no evidence that the vendor and purchaser themselves ever had an interview until that time, if they were even then in each other's presence.

The plaintiff's witness (Mr. Wood) testifies to a conversation with the defendant, in which the defendant stated in terms " that he had employed Mr. Catlin in relation to the purchase of the Conner farm," that being the subject of the purchase and sale now in question. The witness also says, " Mr. Catlin conducted the negotiation altogether." The conversation above referred to was after Mr. Catlin had sent to the defendant stating his claim for compensation for services in that matter.

Again he says: "I was present when Mr. Grote employed Mr. Catlin. He told him he might offer $38,000. Mr. Cat-

lin bought it at $35,000." Other portions of his evidence tend to show that when Mr. Catlin was employed by the defendant he not only had not seen the vendors, or been employed by them, but had not been informed of their views in regard to the price of the farm.

One of the vendors, being examined, testifies "that he employed nobody to act for him in the negotiation; that Mr. Catlin acted for Mr. Grote; that he did not consider Mr. Catlin as acting for him, and did not even know him before." And he adds, "I had no employee in the sale." And again, "I acted on my own behalf." Again, "neither Wood nor Catlin were employed by me to sell the property." There are other circumstances tending to the same result, and the fact that the plaintiff's services were in a high degree efficient in promoting the advantage of the defendant is very prominent. It appears that the vendor's original price was $40,000, and that the defendant authorized the plaintiff to effect the purchase at a price, if necessary, as high as $38,000; and yet the plaintiff procured the property for him at $35,000—$5,000 less than the vendor's price, and $3,000 less than the defendant would have been willing to pay if necessary to secure the purchase. Upon this evidence there would be no room for doubt or hesitation as to the plaintiff's right to recover. There is proof of a retainer, services rendered, and those services proved to be of great value. And it is plain that upon no mere conflict of evidence, when the plaintiff's case is thus established, could the case be taken from the jury, or their verdict in support of a case so *prima facie* proved, be disturbed. Nothing short of evidence which is conclusive, conclusive in a sense which precludes any inquiry whatever, could take such a case from the jury, and such evidence amounts to an estoppel.

The defendant insists that such evidence was produced and appears in the case submitted. Thus, there is evidence that the vendor had stated, in conversation, that he would give $2,000 to any one who would find a purchaser for the farm at $40,000. Before the actual signing of the contract, but

after the employment of the plaintiff by the defendant to make the purchase, the witness, Wood, to whom this declaration of the vendor was made, mentioned it to Mr. Catlin, the plaintiff. This witness was in some way related to the family to whom the estate belonged, and was in the office of the plaintiff as a clerk; but had not then, as he states, mentioned this offer of the vendor to Mr. Catlin. So that, in the negotiation in behalf of the defendant, the plaintiff does not appear to have acted upon the inducement afforded by such offer; on the contrary, his negotiation was wholly addressed to the procurement of the farm at as low a price as possible, and not to procure a purchaser who would pay the vendor's price, and so enable him to earn the $2,000 thus offered. And the result of the negotiation was in conformity with this view of his endeavors, in entire fidelity to the interests of the defendants who had employed him.

When the terms of the purchase were agreed upon, and the contract was ready for signature, the plaintiff sends the defendant a letter, naming the compensation he should expect for his services in the matter, together with some professional charges. After which, and on or before the 5th December, the contract of sale and purchase was duly executed by all of the vendors, except one, and was duly proved as to them on the 5th of December. On what precise day the defendant and the other vendor signed the contract does not appear, whether before the 5th December or after, unless it be inferred from the fact that its execution by them was duly proved for record on the 7th December, a circumstance which hardly warrants the inference that it was not signed until that day. Indeed, but for the plaintiff's letter, dated November 30, which says the contract "will be executed to-morrow," the inference would be that it was executed on the day of its date, as it in terms purports.

On the 6th day of December the plaintiff received from the vendors $700, of which $200 appear to have been given to the witness, Wood, to whom the vendors had made the declaration above referred to, and who appears to have inter-

ested himself in bringing about the purchase and sale. And on the receipt of that money the plaintiff gave a receipt in these words: "Received from Messrs. Richard and Jonathan Conner, Esqrs., $700, in full of all demands for services on the sale and conveyance of the farm of the late Richard Conner, deceased. December 6th, 1853. (Signed,) George Catlin."

This payment evidently grew out of the conversation which one of the vendors (James Conner) had had with the witness, Wood; and Wood testifies that it was paid for finding a purchaser, notwithstanding $40,000 were not obtained, and he, Wood, appears to have conceived himself entitled to a share of it. Mr. Conner, who paid it, says that he never employed either Wood or Catlin, but he had made an offer, in conversation, to pay $2,000 to any one who would find a purchaser at $40,000; and he paid $700 because he thought something ought to be paid for finding the purchaser who did buy, though at a less price.

Under these circumstances, it is insisted by the defendant that the receipt above mentioned was conclusive evidence that the plaintiff acted, in the matter of this purchase and sale, as the agent of the vendors, and received compensation for them for the services which he rendered in that matter; and by the receipt of the $700 he is so concluded that he can neither allege on this trial that he acted under the defendant's employment, nor demand a compensation from the defendant for the services which he rendered.

I do not so understand the effect of the receipt. It is undoubtedly true that, disconnected from all the other circumstances attending these transactions, the receipt imports that the plaintiff had rendered services on the sale and conveyance of the estate in question; for which he sought payment, and for which he was paid. But the admission so implied, from a receipt given by the plaintiff to a third party, does not necessarily estop the plaintiff to prove the real state of the transactions, if it becomes material, as between him and the present defendant. It is only as an admission that it

is urged in evidence. And an admission only operates as an estoppel where it has been acted upon by the party in whose favor it is claimed so to operate, and in such wise that he would suffer injustice if the admission were retracted or contradicted. Such is not this defendant's position. He is a stranger to the receipt, and to the payment of which it is evidence. Assuming the facts to be as the jury have found, it always was and is now a matter of indifference whether that receipt is true or false. The receipt did not, therefore, operate as an estoppel, the defendant being such a stranger to it, and having never acted on the faith of it.

Nor, in my judgment, did the receipt so imply that the plaintiff was acting for the vendor as to preclude the submission of all the evidence on the subject to the jury for the other reason suggested, to wit, that the receipt being taken according to its import, it is written evidence, and not to be overcome, contradicted or explained by any oral testimony.

In the first place, however conclusive between the parties to it, it only operated as between the parties to this suit as an admission, and that only by implication. Now, viewed as an admission only, it is an error to say, that because in writing, it may not be contradicted or explained by oral testimony. It has, as between these parties, no higher effect than a letter to a friend, or any mere statement in writing, which, being found by the defendant, he might introduce on the trial as an admission by the plaintiff, though he never saw or heard of it before.

The case in this respect bears no analogy to an attempt to alter the legal effect of an instrument as between the parties to it or their privies. A man may declare once or ten times, verbally or by writing, that he is not my agent, and yet no one, not even himself, is precluded from proving the contrary, except when such declaration has been acted upon in such wise that it amounts to an estoppel, as before suggested. Nor if such agent should bring his action against me, to recover for his services, would he be held concluded, unless I could show such a state of things. I by no means intend

that such declarations are not high evidence. I do mean to say, that such evidence may be overcome by other proof, though oral.

But again, the receipt is consistent with the other facts relied upon by the plaintiff to support his claim, and is not, therefore, to be taken as a contradiction of the writing itself. It is true, that it is not consistent with the implied admission which the defendant infers from the receipt, but it is with every fact stated in it, and with its entire legal effect, according to its purport as between the parties to it.

Thus it is plainly proved, by the other evidence, that the plaintiff had in fact no legal claim to any compensation from the vendors whatever. They had not employed him for the service for which the defendant is now proceeded against. He had rendered them some professional services after the contract of sale was made; and being called upon by the witness, Wood, to whom their willingness to pay a much larger sum for a purchaser who would pay $40,000, they thought they ought to pay something for a purchaser at a less price. It was not paid for services in making the bargain. It was not paid for services in selling at the best price. It was not so treated or understood by the payor, but he seems to have acted upon some idea that he was in honor or in conscience bound to give something to the plaintiff for finding a purchaser.

This is not inconsistent with the utmost fidelity of the plaintiff to his employer, nor inconsistent with the receipt itself. Indeed, if there were no other oral testimony to this point than that the plaintiff, after the contract was made, did render some professional services for the vendors in closing up the transaction, drawing deeds, and other matters relating to the title, the words "services on the sale and conveyance" would not necessarily imply at all that the plaintiff had not rendered other services for a third person in effecting the purchase.

It is unnecessary to inquire what the effect of the whole evidence would have had on my mind, had I been sitting as a juror. I have, in what I have above recited from the case,

presented it somewhat personally to the plaintiff. But I have only done so for the purpose of showing that it was a case to be submitted to the jury, and I concur in the opinion of the first judge at special term, that their finding must govern us. The order should, therefore, in my opinion, be affirmed.

Order denying a new trial affirmed, with costs.